1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11   ROY C. RIVAS, JR.,                                 )   Civil No. 04CV1154-J (JMA)
                                                       )
12                           Petitioner,               )   **ORDER:**
                                                       )
13                                                     )   **(1) ADOPTING THE MAGISTRATE**
             v.                                        )   **JUDGE'S REPORT AND**
14                                                     )   **RECOMMENDATION;**
                                                       )
15   STUART J. RYAN, Warden,                           )   **(2) DENYING PETITIONER'S**
                                                       )   **PETITION FOR WRIT OF HABEAS**
16                                                     )   **CORPUS;**
                             Respondent.               )
17                                                     )   **(3) DENYING PETITIONER'S**
                                                       )   **MOTION TO EXPAND THE**
18                                                     )   **RECORD; AND**
                                                       )
19                                                     )   **(4) DENYING PETITIONER'S**
                                                       )   **REQUEST FOR AN EVIDENTIARY**
20                                                     )   **HEARING.**
                                                       )
21   ─────────────────────────────────────────────────)

22        Before the Court is Magistrate Judge Jan M. Adler's Report and Recommendation

23   ("R&R") recommending that the Court deny Petitioner Roy C. Rivas, Jr.'s ("Petitioner") Petition

24   for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254. [Doc. No. 52.] Petitioner

25   timely filed Objections to the R&R. [Doc. No. 53.] Respondent has not filed a Reply. For the

26   reasons set forth below, this Court **ADOPTS** the R&R and **DENIES** the Petition in its entirety.

27

28

*Factual Background*

On May 29, 1993, Petitioner, Raymond Senteno, Nancy Jaime, Patsy Moreno, and Gloria Rivas went to Elpidio Beltran's apartment. (Lodgm't No. 3, *People v. Rivas*, No. D021952, slip op. at 3.) Beltran sold drugs to Petitioner's aunt, Gloria Rivas. (*See id.*) Senteno, Jaime, Moreno, Gloria Rivas, and Petitioner intended to rob Beltran of his drugs after scaring him and tying him up with duct tape. (*See id.*) Gloria Rivas, Senteno, and Jaime entered Beltran's apartment, followed by Petitioner. (*See id.*) Petitioner pointed a gun at the downstairs occupants while holding a roll of duct tape. (*See id.*) Gloria Rivas told the downstairs occupants of the apartment that she and her accomplices were the police, unplugged a telephone, and retrieved a young boy who tried to run outside after he saw the guns. (*Id.* at 3.) While Petitioner, Gloria Rivas, and Jaime were holding the occupants downstairs, six-year-old Elpidio Beltran, Jr., ran upstairs and alerted his parents to the events. (*Id.*) Senteno went to the upstairs bedroom where Beltran and his wife were watching a video and shot and killed Beltran. (*Id.*) All the intruders fled the apartment. (*Id.*)

*Procedural Background*

Petitioner was charged with one count of first-degree murder under California Penal Code ("Penal Code") section 187(a) (count 1), one count of attempted robbery under Penal Code Sections 664, 211, 213(b) (count 2), and one count of residential burglary under Penal Code section 459 (count 3). The information also alleged that Petitioner used a firearm during the commission of count 2 and count 3 within the meaning of Penal Code section 12022.5(a). (Lodgm't No. 15 at 2-3.) The jury found Petitioner guilty on all counts, including the allegation under 12022.5(a). (*Id.* at 154.) Petitioner was sentenced to thirty-three years to life. (*Id.* at 156.)

Petitioner filed a direct appeal and a habeas corpus petition in the California Court of Appeal challenging his conviction. (Lodgm't Nos. 6, 2.) On April 26, 1996, the Court of Appeal issued an order to show cause to the San Diego Superior Court in response to Petitioner's habeas petition. (*Id.*) The Court of Appeal directed the Superior Court to hold an evidentiary hearing regarding Petitioner's allegation that there was juror misconduct during his trial when

04CV1154-J (JMA)

1    the foreman, Rudy Medina, did not disclose in voir dire that he had a relationship with

2    Petitioner's mother, Rita Reith, twenty-five years prior.  (R&R at 4.)  After the evidentiary

3    hearing, the Superior Court issued an opinion concluding that Petitioner was not denied a fair

4    trial.  (*Id.*)  Additionally, the Court of Appeal reduced Petitioner's sentence from thirty-three

5    years to life to twenty-nine years to life.  (*Id.*)

6        Petitioner filed and subsequently withdrew a habeas corpus petition in the California

7    Supreme Court.  (*Id.*)  He then filed another habeas corpus petition in the California Supreme

8    Court which was denied without citation of authority.  (*Id.*)

9        On June 9, 2004, Petitioner filed a habeas corpus petition in this Court pursuant to 28

10   U.S.C. § 2254 (2006).  (*Id.*)  On November 3, 2004, Respondent filed a motion to dismiss, which

11   this Court denied on September 29, 2005.  (*Id.* at 4-5.)  On March 15, 2006, Respondent filed an

12   Answer, and on June 6, 2006, Petitioner filed a Traverse and a Motion to Expand the Record.

13   (*Id.*)

14                                   *Legal Standard*

15   **I.  State Prisoner Habeas Corpus Standard**

16       A federal court may grant a habeas petition if the applicant is in custody "in violation of

17   the Constitution or other laws or treaties of the United States."  28 U.S.C. § 2254(a).  State

18   interpretation of state laws and rules cannot serve as the basis for a federal habeas petition, as no

19   federal or constitutional question would be implicated.  *Estelle v. McGuire*, 502 U.S. 62, 68

20   (1991).  Habeas petitions are governed by the provisions of the 1996 Antiterrorism and Effective

21   Death Penalty Act ("AEDPA").

22       Pursuant to AEDPA, a federal court may grant habeas corpus relief from a state court

23   judgment only if the adjudication was (1) contrary to, or involved an unreasonable application

24   of, clearly established federal law, or (2) was based on an unreasonable determination of the

25   facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d);

26   *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

27       A state-court decision is "contrary to clearly established federal law" if it (1) applies a

28   rule that contradicts the governing law set forth in Supreme Court cases, or (2) confronts a set of

1  facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless

2  arrives at the opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court

3  decision is an unreasonable application of the facts "if the state court identifies the correct

4  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

5  principle to the facts of the prisoner's case." *Id.* at 413.

6  **II.  Reviewing a Magistrate Judge's R&R**

7  The duties of the district court in connection with a magistrate judge's R&R are set forth

8  in Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). *See* Fed. R.

9  Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (2005). The district court must "make a *de novo*

10  determination of those portions of the report . . . to which objection is made," and "may accept,

11  reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

12  judge." 28 U.S.C. § 636(b)(1) (2005); *see also United States v. Raddatz*, 447 U.S. 667, 676

13  (1980). "When no objections are filed, the district court may assume the correctness of the

14  magistrate judge's findings of fact and decide the motion on the applicable law." *Johnson v.*

15  *Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001). "Under such circumstances, the Ninth

16  Circuit has held that 'a failure to file objections only relieves the trial court of its burden to give

17  *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*.' " *Id.*

18  (quoting *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir. 1989)). In this case, Petitioner filed

19  objections to the R&R. [Doc. No. 53.] Accordingly, this Court will make *de novo*

20  determinations of factual findings as to those portions of the R&R to which objections have been

21  made.

22  *Petitioner's Objections*

23  Because Petitioner has filed objections to the R&R, the Court must conduct a *de novo*

24  review of the portions of the R&R to which objections were made. Petitioner objects to the

25  R&R on the basis that: (1) there was an unreasonable determination of the facts by the state

26  court because Petitioner was deprived of his right to exercise a peremptory challenge; (2) there

27  was an unreasonable application of federal law because the foreman, Medina, lied during voir

28  dire, and bias therefore should have been inferred; (3) the state court's decision regarding

1    Petitioner's right to peremptorily challenge Medina and Medina's presence on the jury were

2    contrary to federal law; (4) the admission of Patsy Moreno's statement to a police officer that

3    she was the getaway driver violated Petitioner's Sixth Amendment right to confront and cross-

4    examine witnesses against him; (5) Gloria Rivas' testimony violated Petitioner's Sixth

5    Amendment right to a fair trial and to cross-examination because she testified using a "script"

6    that the prosecution provided; (6) the R&R incorrectly concluded that there is no evidence in the

7    record that Gloria Rivas' testimony was false; (7) the cumulative effect of the errors in

8    Petitioner's case prejudiced the outcome. (Pet'r's Objs. at 2-3.)

9                                    *Discussion*

10       The R&R recommends that the Petition, the motion for an evidentiary hearing, and the

11   motion to expand the record be denied.  (R&R at 2.)  The R&R finds that there was no juror

12   misconduct on behalf of jury foreman Medina, who had a relationship with Petitioner's mother

13   twenty-five years before Petitioner's trial.  (R&R at 16.)  Additionally, the R&R concludes that

14   Petitioner's Sixth Amendment rights were not violated when Patsy Moreno's statement that she

15   was the "getaway driver" was admitted.  (R&R at 20.)  The R&R further finds that witness

16   Gloria Rivas did not testify according to a script, but instead was told by the prosecution to

17   testify truthfully.  (R&R at 23.)  Finally, the R&R concludes that there was no admission of false

18   evidence by the prosecution, there was no cumulative error, and the Motion to Expand the

19   Record and the Motion for an Evidentiary Hearing should be denied.  (R&R at 29.)  After a *de*

20   *novo* review of the factual findings relevant to Petitioner's Objections and a *de novo* review of

21   all conclusions of law, this Court **FINDS** the R&R correctly addressed the issues raised in the

22   Petition.  Therefore, for the reasons set forth below, the Court **ADOPTS** the R&R in its entirety

23   and **DENIES** the petition for writ of habeas corpus, the Motion to Expand the Record, and the

24   Motion for an Evidentiary Hearing.

25   **I.       There Was Not an Unreasonable Determination of the Facts In Light of the
             Evidence Presented In the State Court Proceedings**

26

27       Petitioner claims that there was an unreasonable determination of the facts when the State

     Court found that jury foreman Medina did not lie during voir dire and was not biased against

28   Petitioner.  Pursuant to AEDPA, a federal court may grant habeas corpus relief from a state court

1  judgment if the adjudication was based on an unreasonable determination of the facts in light of

2  the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d); *Early v. Packer*, 537

3  U.S. 3, 7-8 (2002).

4      **A.  The Superior Court's Finding that Foreman Medina Did Not Lie During Voir Dire**

5

6      Petitioner claims that the state court's finding that there was no juror misconduct on

behalf of jury foreman Medina was based on an unreasonable determination of the facts.  (Pet'r's

7  Pet. at 8-17.)  When the Superior Court questioned Media during voir dire, he described how he

8  knew Petitioner's mother:

9

10      THE COURT: Let's talk about the beginning here.  How did you know her at that time?

11      PROSPECTIVE JUROR NO. 9: We worked for the same company.
    THE COURT: What company?

12      PROSPECTIVE JUROR NO. 9: Deutch Company in Oceanside.
    THE COURT: What kind of work?

13      PROSPECTIVE JUROR NO. 9:  Electronic components.
    THE COURT: How long did you know her at that company?

14      PROSPECTIVE JUROR NO. 9: Two or three years.
    THE COURT: Were there events in your life that caused you to know

15      her and her family socially during that time?
    PROSPECTIVE JUROR NO. 9: Not really.

16      THE COURT: Company picnics?
    PROSPECTIVE JUROR NO. 9: Yeah.

17      THE COURT: Any clear memory or recollection of you meeting with, speaking with, or having any relationship with any of her family

18      members?
    PROSPECTIVE JUROR NO. 9: I believe I saw him when he was a

19      small child, five, six or seven-years-old.
    THE COURT: Do you . . . find yourself having some feelings of loyalty,

20      allegiance, partiality of any sort that would affect you here?
    PROSPECTIVE JUROR NO. 9: That was 25 years ago.

21

22   (Lodgm't No. 14 (July 19, 1994 Rep.'s Tr.) at 80-81.)

23      Medina was also questioned by Petitioner's trial attorney about the nature of

24  his relationship with Petitioner's mother twenty-five years prior:

25

    MR. BOESEN: Mr. Medina, you talked to the judge about knowing Ms.

26      Rivas [Reith] at some point in time, a long time ago.  What was your relationship with her at that time?

27      PROSPECTIVE JUROR NO. 9: I was her supervisor at work.
    MR. BOESEN: Any opportunity to share family secrets or family

28      history?  Anything about her personal life during the course of that relationship?

04CV1154-J (JMA)

1    PROSPECTIVE JUROR NO. 9: Not a whole lot, some.
     MR. BOESEN: I'm sorry?
2    PROSPECTIVE JUROR NO. 9: Some.
     MR. BOESEN: Anything in a personal nature you feel you could share
3    with us?
     PROSPECTIVE JUROR NO. 9: No.

4

5    (*Id.* at 146.)

6        On April 26, 1996, in response to Petitioner's state petition for writ of

7    habeas corpus, the California Court of Appeal issued an order directing the San

8    Diego County Superior Court to hold an evidentiary hearing addressing the

9    following questions:

10           1) Whether Juror Rudy Medina in fact had a romantic
         relationship with [Petitioner's] mother.  If so,
11           2) What were the circumstances of the relationship and its
         termination, including whether there was any lasting influence on
12       Medina?
             3) Did Medina tell the whole truth in answering the court's and
13       Rivas' counsel's questions of him during the voir dire?
             4) What, if any, justification was there for Medina's
14       nondisclosure of the relationship with [Rivas'] mother in response to the
         questions asked during voir dire by the court and Rivas' counsel?
15           5) Did Medina's nondisclosure operate to deprive Rivas of his
         rights to challenge a prospective juror for cause or to exercise a
16       peremptory challenge?

17    (Lodgm't No. 2(a) at 1, 2.)

18       In response to questions one and two, the Superior Court found that Medina had

19   been in a romantic relationship with Petitioner's mother that lasted from four to six

20   months. (Lodgm't No. 5, Ex. F at 1.)  Additionally, the Court concluded that the

21   relationship was "a casual dating relationship" and a "physical/sexual relationship" that

22   did not end acrimoniously and did not have a lasting influence on Medina.  (*Id.* at 1-3.)

23       In response to question three, the Superior Court found that Medina had been

24   truthful in his answers regarding his relationship with Petitioner's mother.  (Lodgm't No.

25   5, Ex. F at 3.)  In response to the fourth question, the Court decided that Medina's answers

26   on voir dire were justified because the questions did not address the personal aspects of his

27   relationship with Petitioner's mother.  (*Id.* at 3-4.)  Finally, the Superior Court concluded

28

                                        7                                04CV1154-J (JMA)

1   that Medina's nondisclosure of the relationship did not deprive Petitioner of his right to

2   exercise a peremptory challenge.  (*Id.* at 5.)

3         The R&R states that the Superior Court's determination that Medina did not lie in

4   voir dire about the nature of his relationship with Petitioner's mother was not an

5   unreasonable determination of the facts in light of the evidence presented in state court

6   proceedings.  The R&R concludes that although Medina's answers were misleading, the

7   state court's factual determination was not unreasonable because it is plausible that

8   Medina interpreted the questions as only involving his work relationship with Petitioner's

9   mother.  (R&R at 13.)

10        The Court agrees with the R&R that the state court's factual determination was not

11   unreasonable.  A "state court factual determination is unreasonable only if it is 'so clearly

12   incorrect that it would not be debatable among reasonable jurists.' " *Jeffries v. Wood,* 114

13   F.3d 1484, 1500 (9th Cir. 1997), *overruled on other grounds by Lindh v. Murphy*, 521

14   U.S. 320 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).  The

15   R&R concludes that "the state court's factual determination was not unreasonable because

16   it is at least plausible that Medina believed the court and counsel were only interested in

17   his work relationship with Reith." (R&R at 13.)  The R&R's conclusion is supported by

18   testimony during the evidentiary hearing.  When asked, "Was there any reason you didn't

19   reveal the nature of the relationship with [Reith] when the court was asking you those

20   questions?" Medina responded, "I was never asked."  (Lodgm't No. 2(b) at 210.)

21   Medina's response to the question shows that it is plausible that he believed that he should

22   only answer the questions asked, and not reveal anything about the romantic relationship

23   with Reith in detail.

24        Petitioner objects to the R&R and declares that Medina lied when he responded

25   "Not really" when asked, "Were there events in your life that caused you to know her and

26   her family socially during that time?" (Lodgm't No. 14 (July 19, 1994 Rep.'s Tr.) at 80-

27   81.)  Petitioner argues that, "given the absence from the record of any indication that

28   Medina misunderstood the question, the state court's finding that he did not lie because he

04CV1154-J (JMA)

1   did not realize what he was being asked must be seen as an unreasonable determination of

2   the facts." (Pet'r's Objs. at 3.)  However, this Court concludes that there is at least some

3   evidence supporting the state court's finding that Medina did not lie.  Medina claimed he

4   did not tell the Court about his romantic relationship with Reith because he was not

5   directly asked, and he was confused by the question "were there events in your life that

6   caused you to know Mrs. Rivas and her family socially during that time?  (Lodgm't No.

7   2(b) at 210-11.)  Additionally, as established in *Jeffries*, "In a proceeding instituted by an

8   application for a writ of habeas corpus by a person in custody pursuant to the judgment of

9   a State court, a determination of a factual issue made by a State court shall be presumed to

10  be correct." 114 F.3d at 1500.   This Court **ADOPTS** the R&R's application of the rule in

11  *Jeffries*, because the state court's factual determinations were not "so clearly incorrect that

12  [they] would not be debatable among reasonable jurists." *Id.*

13

14          **B.  The Superior Court's Determination that Jury Foreman Medina Was Not
              Biased Against Petitioner**

15          The R&R adopts the state court's finding that Medina's relationship with

16  Petitioner's mother did not bias him against Petitioner.  The R&R concludes that Medina

17  was not biased against Petitioner because the relationship occurred twenty-five years

18  before and had no effect on him at the time of Petitioner's trial.  Petitioner objects to the

19  R&R's conclusion that Medina was not biased against him.  In addition, Petitioner states

20  that he would have used his right to peremptorily challenge Medina had he been given the

21  opportunity to do so.

22           Any party to an action can make an objection and challenge a prospective juror for

23  cause.  Cal. Civ. Proc. Code § 225 (2007).  Implied bias and actual bias are grounds for

24  challenging prospective jurors for cause. *See McDonough Power Equip., Inc. v.*

25  *Greenwood*, 464 U.S. 548, 558 (1984).  Actual bias is "the existence of a state of mind on

26  the part of the juror in reference to the case, or any of the parties, which will prevent the

27  juror from acting with entire impartiality, and without prejudice to the substantial rights of

28  any party."  Cal. Civ. Proc. Code § 225(b)(1)(c) (2007).  Implied bias can be inferred from

1  "the existence of a state of mind in the juror evincing enmity against, or bias towards,

2  either party."  Cal. Civ. Proc. Code § 229(f) (2007).  In addition to challenges for cause, a

3  party to a trial is also entitled to peremptory challenges to remove jurors.  *See* Cal. Civ.

4  Proc. Code § 231 (2007).

5          The Court agrees with the R&R and **FINDS** that Medina's relationship with

6  Petitioner's mother did not bias him against Petitioner.  When asked, "Do you . . . find

7  yourself having some feelings of loyalty, allegiance, partiality of any sort that would affect

8  you here?", Medina replied, "That was twenty-five years ago."  The Court agrees with the

9  R&R that "although not precise, Medina's response can logically be taken to mean . . . that

10  the relationship occurred a long time ago and had no [effect] on him in the present."  (*See*

11  R&R at 16.)  Further, the testimony elicited during the evidentiary hearing supports the

12  R&R's conclusion that Medina's relationship with Petitioner's mother did not end

13  acrimoniously.  Reith was asked a series of questions about her breakup with Medina, and

14  whether the relationship ended on bad terms:

15          [Government's Attorney]: Mr. Medina was not the one who ended the
          relationship acrimoniously was he?
16          THE COURT: I think the question, Mrs. Reith, is whether or not Mr.
          Medina ended the relationship angrily or on bad terms.  "Acrimony"
17          means to do so with anger, with a lot of animosity.   That's what
          "acrimony" means.
18          THE WITNESS: No.
          THE COURT: Did he end it like that?
19          THE WITNESS: No.

20  (Lodgm't No. 2(b) at 108.)  Although Reith stated at the hearing that Medina wanted to

21  marry her, but she would not marry him because she did not believe that he would be

22  faithful, this testimony was contradicted by her declaration.  (*See id.* at 61-62.)  In her

23  declaration, Reith stated that "Mr. Medina refused to divorce his wife and marry me."

24  (Reith Decl. ¶ 3)  As a result, any bias that may have been inferred to Medina as a result of

25  Reith's refusal to marry him is undermined by her declaration stating that it was actually

26  Medina who opposed the couple's marriage.

27          Petitioner also claims that his right to a peremptory challenge was denied.  The

28  R&R concludes that the state courts' factual finding that Petitioner was not denied his

1  right to a peremptory challenge is reasonable for two reasons.  (R&R at 16.)  First, the

2  information that Medina failed to disclose in voir dire was not directly related to bias.

3  Second, even if Medina had disclosed the relationship, there is no certainty that

4  Petitioner's counsel would have exercised a peremptory challenge.  (*See* Lodgm't No. 6,

5  Ex. F at 7; Lodgm't No. 3 at 14-15.)  The findings of the R&R and the state courts are

6  supported by Medina's testimony during the evidentiary hearing that his relationship with

7  Reith ended twenty-five years ago, that the relationship was casual, and that he did not

8  harbor any bad feelings toward Reith when they separated.  (*See* Lodgm't No. 2(b) at 197.)

9  Accordingly, the Court **FINDS** that Petitioner was not denied his right to exercise a

10  peremptory challenge to Medina.

11  **II.  Petitioner Was Not Denied His Right to an Impartial Jury**

12      In addition to alleging that Medina was biased against him, Petitioner similarly

13  alleges that he was denied his right to an impartial jury.  The R&R concludes that

14  Petitioner was not denied his right to an impartial jury because the evidentiary hearing did

15  not indicate that there was bias against him.  In *Smith v. Phillips*, the Supreme Court held

16  that "the remedy for allegations of juror partiality is a hearing in which the defendant has

17  the opportunity to prove actual bias."  455 U.S. 209, 215 (1982).  As already stated,

18  Petitioner received an evidentiary hearing and was unable to prove actual bias because

19  Medina's testimony showed that his casual relationship twenty-five years prior with Reith

20  did not end acrimoniously.  The Court thus **ADOPTS** the R&R's conclusion and **DENIES**

21  Petitioner's claim that he was denied his right to an impartial jury.

22  **III.   Sixth Amendment Violations**

23      Petitioner contends that his Sixth Amendment rights were violated because (1)

24  Patsy Moreno's statement to a police officer that she was the getaway driver violated his

25  right to confront and cross-examine witnesses, and (2) the admission of Gloria Rivas'

26  testimony violated his Sixth Amendment rights to a fair trial because she testified

27  according to a script.

28

04CV1154-J (JMA)

1                   **A. The Admission of Moreno's Statement that She Was the Getaway Driver**

2         The R&R concludes that Petitioner's Sixth Amendment rights were not violated by

3 the admission of Moreno's statement to a police officer that she was the getaway driver.

4         The Confrontation Clause of the Sixth Amendment is outlined in *Crawford v.*

5 *Washington*, 541 U.S. 36 (2004).  The *Crawford* court held that "[t]estimonial statements

6 of witnesses absent from trial are admissible only where the declarant is unavailable, and

7 only where the defendant has had a prior opportunity to cross-examine [the witness]." *Id.*

8 at 59.  Because Moreno stated that she was the getaway driver during her interrogation by

9 Officer Martin Silva (*See* Lodgm't No. 14, Vol. 3 at 344), her statement is considered

10 testimonial, and would not be admissible under *Crawford* unless Petitioner had a prior

11 opportunity to cross-examine her.  (R&R at 19.)

12         However, due to the Supreme Court's decision in *Whorton v. Bockting*, 127 S. Ct.

13 1173 (2007), *Crawford* does not apply to the admissibility of Moreno's statements.  The

14 *Whorton* court held that the *Crawford* rule is not a "watershed rule" and cannot be applied

15 retroactively on collateral review.  *Id.* at 1181.  Because Petitioner's appeal was decided in

16 1996, and *Crawford* was decided in 2004, *Crawford* does not apply to Petitioner's case.

17 Instead, the test in *Ohio v. Roberts*, 448 U.S. 56 (1980), controls.  *Roberts* provides that

18 hearsay testimony is admissible if: (1) the declarant is unavailable; and (2) the statement

19 either falls within a firmly rooted hearsay exception or bears adequate indicia of reliability.

20 *Id.* at 66.  Even if Petitioner demonstrates that Moreno's statement does not fall within a

21 firmly rooted hearsay exception or does not bear indicia of reliability, he still is not

22 entitled to relief unless the error "had 'substantial and injurious effect or influence in

23 determining the jury's verdict.' " *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)

24 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

25         To challenge the admissibility of Moreno's statement, Petitioner must demonstrate

26 that the statement that Moreno made either did not fall within a firmly rooted hearsay

27 exception or did not bear an adequate indicia of reliability.  *See Roberts*, 448 U.S. at 56.

28 Petitioner objects on the basis that Moreno's statement did not bear an indicia of

           04CV1154-J (JMA)

1   reliability.  However, "self-inculpatory statements have long been recognized as bearing

2   strong indicia of reliability."  *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004).  The

3   R&R concludes that the statement bore an indicia of reliability because "Moreno

4   implicated herself when she admitted she was the 'getaway driver' for the robbery attempt,

5   but did not attempt to shift blame or implicate [Petitioner]."  (R&R at 19.)  The R&R's

6   conclusion is supported by the fact that Moreno told a police officer that she was the

7   getaway driver, and it is unlikely that she would have fabricated a statement to the police

8   that inculpated herself.  Therefore, this Court **FINDS** that Moreno's statements were

9   admissible because she was unavailable due to exercising her Fifth Amendment privilege

10  against self-incrimination, and her statement bore an indicia of reliability.  This Court thus

11  **ADOPTS** the R&R's conclusion that Petitioner was not denied his Sixth Amendment right

12  to confront and cross-examine Moreno.

13          **B.  The Admission of Gloria Rivas' Testimony**

14          Petitioner contends that during his trial, witness Gloria Rivas testified according to

15  a script provided by the prosecution so that she could obtain a plea deal.  Petitioner asserts

16  that Gloria Rivas' alleged false testimony violated his due process rights.  In exchange for

17  testifying, Gloria Rivas was to plead guilty to second-degree murder and attempted

18  robbery.  (Lodgm't No. 14, Vol. 4 at 380.)

19          The Ninth Circuit has held that "an agreement that requires a witness to testify

20  truthfully in exchange for a plea is proper so long as 'the jury is informed of the exact

21  nature of the agreement, defense counsel is permitted to cross-examine the accomplice

22  about the agreement, and the jury is instructed to weigh the accomplice's testimony with

23  care.' "  *Allen v. Woodford*, 395 F.3d 979, 995 (9th Cir. 2005) (quoting *United States v.*

24  *Yarbrough*, 852 F.2d 1522, 1537 (9th Cir. 1988)).

25          The jury was informed of the nature of the plea agreement before Gloria Rivas

26  testified.  (Lodgm't No. 14, Vol. 4 at 380.)  During Gloria Rivas' direct examination, she

27  stated that Rivas had a gun and tape in his hand, but alluded that Rivas and the others did

28

1   not talk about how they were going to use the gun and tape in connection with the robbery.

2   The prosecutor then sought to correct her testimony:

3   > Q: What was the [tape] to be used for, Gloria?
>   A: I don't know what he was going to use it for.  Or–I don't know,
4   > nobody talked about nothing, what we were going to use it, I don't
>   know.
5   > Q: Gloria, you know if you don't tell the truth I will prosecute you for
>   first degree murder, don't you?
6   > A: Yes, I do.
>   Q: And?
7   > A: Yes, I know that.

8   (*Id.* at 414.)

9         Gloria Rivas then changed her testimony, and she stated that she, Petitioner,

10   Senteno, Jaime, and Moreno discussed that they were going to rob Beltran for his drugs

11   and scare him with the gun.  (*Id.* at 422.)  In an exchange between Petitioner's attorney

12   and Gloria Rivas during cross-examination, Petitioner's attorney stated that if Gloria Rivas

13   did not testify truthfully, she would forfeit her plea agreement:

14   > Q: In fact, [the prosecutor] during direct examination, would you say,
>   appeared to get a little upset with you?
15   > A: Today?
>   Q: Yes.
16   > A: Yes.
>   Q: Told you you might not get your deal, right?
17   > A: Yes.
>   Q: Scared you, didn't it?
18   > A: Of course.
>   Q: Badly?
19   > A: Yes.
>   Q: That is when you came back in here and changed your testimony,
20   > correct?
>   A: Yes.
21   > Q: Told you he was pretty upset with you, right?
>   A: Yes.
22   > Q: Told you if you don't get your act together and say what you were
>   supposed to say you would be in big trouble.
23   > A: Not what I'm supposed to say, the truth is what he said.

24   (*Id.* at 490-91.)

25         The R&R concludes that Petitioner's claim that Gloria Rivas was testifying

26   according to a script is not plausible because Gloria Rivas was instructed to testify

27   truthfully.  (R&R at 23.)  Petitioner objects to the R&R on the basis that Gloria Rivas'

28   testimony was restricted to benefit the prosecution and not the defense.  (Pet'r's Objs. at

14                                                      04CV1154-J (JMA)

1   15.)  However, Petitioner does not offer any evidence other than his own assertions

2   supporting the premise that Gloria Rivas testified according to a script.  The record

3   indicates that Gloria Rivas was instructed to testify truthfully, and that she understood this

4   instruction.  (*See* Lodgm't No. 14, Vol. 4 at 414, 491.)  In addition, Petitioner's attorney

5   questioned Gloria Rivas regarding the truthfulness of her testimony, and she indicated that

6   she understood her obligation to tell the truth.  Further, the jury was aware of the plea

7   agreement between Gloria Rivas and the prosecution, and the jury was instructed to take

8   her plea agreement into account when assessing her testimony.  (Lodgm't No. 14, Vol. 4 at

9   380.)  Finally, the Court notes that it is not improper for a witness to testify truthfully in

10  exchange for a plea agreement.  *See Allen*, 395 F.3d at 995.  Accordingly, the Court

11  **ADOPTS** the R&R's conclusion that the admission of Gloria Rivas' testimony was not an

12  unreasonable application of law.

13  **IV.  Petitioner's Claim that His Due Process Rights Were Violated Due to the
    Prosecution's Use of False Evidence**

14
15          Petitioner objects to the R&R's statement that false evidence must be knowingly

16  used by the prosecution for a conviction to be set aside.  Petitioner also objects to the

17  R&R's conclusion that there is no evidence that the prosecution used false evidence.

18  Petitioner argues that false evidence was used when "Gloria testified under oath that

19  petitioner did not have a gun or duct tape and that the only reason she changed her

20  testimony was because of the prosecutor's duress and to earn her deal." (Pet'r's Objs. at

21  19.)

22          The Supreme Court has consistently held that "a conviction obtained by the

23  knowing use of perjured testimony is fundamentally unfair, and must be set aside if there

24  is any reasonable likelihood that the false testimony could have affected the judgment of

25  the jury." *See United States v. Agurs*, 427 U.S. 97, 103 (1976).  Although a prosecutor's

26  presentation of false evidence is viewed seriously and its effects must be carefully

27  scrutinized, a new trial is not automatically granted.  *United States v. Polizzi*, 801 F.2d

28  1543, 1550 (9th Cir. 1986).  Rather, a finding of "materiality of the evidence" is required.
    *Id.*

1    There is no evidence in the record that the prosecutor offered false testimony or

2    coerced Gloria Rivas' testimony.  Even though Gloria Rivas initially testified that she did

3    not know what the tape would be used for and that the robbery was not planned, she

4    corrected herself and stated that she, Petitioner, and the other accomplices discussed the

5    robbery beforehand.  (Lodgm't No. 14, Vol. 4 at 422.)  The prosecutor pointed out the

6    inconsistencies in Gloria Rivas' testimony, and she corrected them while testifying under

7    oath during direct examination.  Moreover, Petitioner's attorney questioned Gloria Rivas

8    regarding the truthfulness of her testimony, and she stated that she knew that she had to

9    tell the truth.  (Lodgm't No. 14, Vol. 4 at 490-491.)  In addition, evidence introduced at

10   trial established that Petitioner and four accomplices traveled to the apartment with a gun

11   and duct tape, unplugged the phone once they reached the apartment, and designated a

12   getaway driver.  (Lodgm't No. 3, *People v. Rivas*, No. D021952, slip op. at 3.)  These facts

13   suggest that the group had developed a plan before the robbery took place.  In contrast,

14   Petitioner has failed to put forth any evidence or point to any testimony supporting his

15   account that the robbery was not planned.  Finally, even if Gloria Rivas falsely testified

16   that the robbery was planned, there is no reasonable likelihood that the false testimony

17   could have affected the judgment of the jury due to other evidence establishing that

18   Petitioner participated in the robbery by pointing a gun at the occupants of the victim's

19   apartment.  The Court thus **FINDS** that the prosecution did not use or solicit false

20   testimony, and that Petitioner's due process rights were not violated.

21   **V.  Cumulative Impact of the Errors In the Case**

22       Petitioner argues that the cumulative impact of the alleged errors in this case

23   entitles him to relief.  A "cumulative error applies where, 'although no single trial error

24   examined in isolation is sufficiently prejudicial to warrant a reversal, the cumulative effect

25   of multiple errors [has] still prejudiced a defendant.' " *Whelchel v. Washington*, 232 F.3d

26   1197, 1212 (9th Cir. 2000) (quoting *United States v. Frederick*, 78 F.3d 1370, 1381 (9th

27   Cir. 1996)).  The R&R states that "no constitutional errors occurred at [Petitioner's] trial,

28   and thus there is no cumulative effect." (R&R at 26.)  Petitioner objects on the basis that

1  "the implied bias of the jury foreman, Patsy's out-of-court testimonial statement and

2  Gloria's coerced testimony contradicting her uncoerced exculpatory testimony all

3  conjoined to so infect the trial with unfairness as to make the resulting conviction a denial

4  of due process."  (Pet'r's Objs. at 20.)

5         The Court has examined Petitioner's claims and has found no indication that there

6  were constitutional errors at trial.  As noted above, Petitioner has failed to demonstrate

7  juror misconduct or that his Sixth Amendment rights were violated.  Even if there were

8  constitutional errors at trial, the weight of the evidence indicates that the outcome of the

9  trial would have been the same regardless of the alleged errors.  Accordingly, this Court

10 **ADOPTS** the R&R and **DENIES** Petitioner relief.

11 **VI.  Motion to Expand the Record**

12        Petitioner filed a Motion to Expand the record to include a declaration by prisoner

13 Dale R. Hurd as well as twelve additional exhibits regarding the timeliness of the Petition.

14 (R&R at 26.)  Because the Court decided in its September 29, 2005 Order that the Petition

15 is timely, the Court **DENIES AS MOOT** the Motion to Expand the Record.  [*See* Doc.

16 No. 33.]

17 **VII.  Motion for an Evidentiary Hearing**

18        Petitioner moves for an evidentiary hearing, but does not state why he should be

19 granted an evidentiary hearing.  A district court has discretion to grant a motion for an

20 evidentiary hearing.  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999).  Evidentiary

21 hearings in 28 U.S.C. § 2254 habeas cases are governed by the AEDPA.  In order for a

22 district court to grant an evidentiary hearing, the Court must "determine whether a factual

23 basis exists in the record to support the petitioner's claim."  *Insyxiengmay v. Morgan*, 403

24 F.3d 657, 670 (9th Cir. 2005) (quoting *Baja*, 187 F.3d at 1078).  If there is no factual

25 basis, then the court must "ascertain whether the petitioner has 'failed to develop the

26 factual basis of the claim in State court.' "  *Insyxiengmay,* 403 F.3d at 670 (quoting *Baja*,

27 187 F.3d at 1078).  If "the Petitioner has failed to develop the factual basis for his claim in

28 state court, 'the court must deny a hearing unless the applicant establishes one of the two

1    narrow exceptions set forth in § 2254 (e)(2)(A) & (B).' " *Insyxiengmay*, 403 F.3d at 670

2    (quoting *Baja*, 187 F.3d at 1078).  There are six situations where a habeas petitioner

3    should be entitled to an evidentiary hearing: "(1) the merits of the factual dispute were not

4    resolved in the state hearing; (2) the state factual determination is not fairly supported by

5    the record as a whole; (3) the fact-finding procedure employed by the state court was not

6    adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly

7    discovered evidence; (5) the material facts were not adequately developed at the

8    state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford

9    the habeas applicant a full and fair fact hearing." *Townsend v. Sain*, 372 U.S. 293, 313

10   (1963), *overruled on other grounds by Keeny v. Tamayo-Reyes*, 504 U.S. 1, 5 (1992).

11           This Court **ADOPTS** the R&R's conclusion that Petitioner received a full and fair

12   evidentiary hearing regarding the relationship between Medina and Petitioner's mother,

13   making another evidentiary hearing unnecessary.  Petitioner had an adequate opportunity

14   to develop the record because both Medina and Reith were questioned at the evidentiary

15   hearing.  Additionally, Petitioner does not satisfy any of the six factors in the *Townsend*

16   test because the state court made a reasonable determination of the facts, and Petitioner

17   has failed to raise any newly discovered evidence.  For these reasons the Court **DENIES**

18   Petitioner's Motion for an Evidentiary Hearing.

                                              *Conclusion*

20           For the reasons set forth above, this Court **ADOPTS** the R&R and **DENIES** the

21   Petition in its entirety.

22           **IT IS SO ORDERED**.

23   DATED:  June 19, 2007

24   _____

25   HON. NAPOLEON A. JONES, JR.
     United States District Judge

26   cc: All Parties
         Magistrate Judge Adler

27

28